IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA,        §
                                 §
               Plaintiff,        §
                                 §  Criminal No. 3:08-CR-267-D(02)
VS.                              §
                                 §
                                 §
LAZARO FERNANDO RODRIGUEZ,       §
                                 §
               Defendant.        §

MEMORANDUM OPINION
AND ORDER

     Defendant Lazaro Fernando Rodriguez ("Rodriguez") moves to
withdraw his guilty plea.  For the reasons that follow, the court
denies the motion.

I

     On September 3, 2008 Rodriguez was indicted on counts of
conspiracy to possess with intent to distribute and distribute a
controlled substance (more than five kilograms of a mixture and
substance containing a detectable amount of cocaine), in violation
of 21 U.S.C. § 846, and conspiracy to launder money, in violation
of 18 U.S.C. § 1956(h).  The indictment also included a forfeiture
count.  Rodriguez retained Phillip Linder, Esquire ("Linder") as
his attorney.  Rodriguez pleaded not guilty on October 3, 2008, and
the court set his trial for March 16, 2009, later continued to June
22, 2009.  On March 3, 2009 Rodriguez signed a plea agreement, plea
agreement supplement, and factual resume.  The government signed
the documents on March 16, 2009, and they were filed with the clerk

the next day.  In the plea agreement, Rodriguez agreed to plead guilty to count one, which charges him with conspiracy to possess with intent to distribute and distribute more than five kilograms of cocaine.

The court scheduled a hearing for April 10, 2009 to take his plea.  During the plea proceeding, Rodriguez advised the court that he did not want to plead guilty and that he wanted to replace Linder as his attorney.  Later that day, Linder filed a motion to withdraw.  The court granted the motion, and the magistrate judge appointed the Federal Public Defender.  Rodriguez again retained private counsel, and on May 11, 2009 James C. Belt, Jr., Esquire ("Belt") entered his appearance.

On June 16, 2009, just before the commencement of trial on June 22, 2009 (of the several defendants indicted in this case, only Rigoberto Mata, Jr. ("Mata") went to trial), Rodriguez appeared before the court again to enter a guilty plea, this time represented by Belt.  In accordance with his plea agreement, Rodriguez pleaded guilty to count one, the cocaine conspiracy count.  The court set sentencing for September 25, 2009.

The probation officer disclosed the presentence report ("PSR") on August 5, 2009.  Rodriguez moved the court three times to continue the sentencing,[1] and the court granted each motion.  In a

---

[1]His November 11, 2009 motion, styled as his "second," was actually his third.

- 2 -

*pro se* letter dated November 9, 2009 (filed under seal),[2] Rodriguez advised the court of his "intention to withdraw [his] plea of guilt in the above referenced cause, and to obtain a new attorney." Nov. 9, 2009 Letter 1.[3]    On November 12, 2009 the court set the sentencing for January 8, 2010.   On January 5, 2010, through Belt, Rodriguez filed the instant motion to withdraw his guilty plea under Fed. R. Crim. P. 11(d)(2)(B),[4] which the government opposes. The court has reset the sentencing to January 29, 2010 so that it

---

[2]Although the court directed that the motion be filed under seal, the court quotes parts of the letter in this memorandum opinion and order because doing so is necessary to explain the court's decision rejecting certain grounds on which Rodriguez relies.

[3]Rodriguez is represented in this case by counsel.   He does not have a right to hybrid representation, in which his counsel files some motions and he files others. *See, e.g., United States v. Hardeman*, 48 Fed. Appx. 918, 2002 WL 31115183, at **1 (5th Cir. Sept. 19, 2002) (per curiam) (unpublished opinion) ("[Defendant] was represented by counsel in the district court, and he had no right to hybrid representation." (citing *United States v. Daniels*, 572 F.2d 535, 540 (5th Cir. 1978))).   Accordingly, this court is not required to accept his *pro se* motions.   *See id.* ("The district court need not have accepted [defendant's] pro se motions."). Nevertheless, to ensure that this decision addresses not only assertions that Rodriguez's counsel makes but that Rodriguez himself advances, the court will address Rodriguez's letter in deciding this motion.   And in assessing the timeliness of his motion, the court will give him the benefit of the November 9, 2009 date, rather than the January 5, 2010 date on which his attorney filed the motion, since it is apparent that he desired to withdraw his plea as early as November 9, 2009.

[4]Rodriguez cites Fed. R. Crim. P. 32(d) as the rule on which his motion is based.   Although Rule 32 formerly addressed motions to withdraw pleas, *see, e.g., United States v. Carr*, 740 F.2d 339, 343 (5th Cir. 1984) (addressing former Rule 32(d)), this procedure has been relocated to Rule 11(d)(2)(B).   Accordingly, the court treats the motion as made under Rule 11(d)(2)(B).

- 3 -

can consider the motion.

## II

## A

Rule 11(d)(2)(B) provides that "[a] defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal."

> A defendant does not have an absolute right to withdraw his guilty plea. When requesting withdrawal before sentencing, the defendant must show a fair and just reason for the request. When determining whether a fair and just reason has been shown, a court considers the factors set forth in *United States v. Carr.* The factors include whether (1) the defendant has asserted his innocence, (2) the government would be prejudiced, (3) the defendant delayed in requesting the withdrawal, (4) the court would be substantially inconvenienced, (5) the close assistance of counsel was available, (6) the plea was knowing and voluntary, (7) the withdrawal would waste judicial resources, and as applicable, the reason why defenses advanced later were not proffered at the time of the original pleading, or the reasons why a defendant delayed in making his withdrawal motion.

*United States v. Washington*, 480 F.3d 309, 316 (5th Cir. 2007) (quoting *United States v. Powell,* 354 F.3d 362, 370 (5th Cir. 2003), Rule 11(d)(2)(B), and *United States v. Carr*, 740 F.2d 339, 343-44 (5th Cir. 1984) (footnotes, brackets, and internal quotation marks omitted)). "A mere change of mind is insufficient to permit the withdrawal of a guilty plea before sentencing." *Id.* at 316-17

- 4 -

(brackets, internal quotation marks, and ellipsis omitted) (quoting *United States v. Glinsey*, 209 F.3d 386, 397 (5th Cir. 2000)). "Withdrawal is permitted for pleas unknowingly made; the purpose is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *Id.* at 317 (brackets and internal quotation marks omitted) (quoting *Carr*, 740 F.2d at 345).

"The defendant bears the burden of establishing a fair and just reason for withdrawing his plea." *Powell,* 354 F.3d at 370 (citing *United States v. Brewster*, 137 F.3d 853, 858 (5th Cir. 1998)). "The district court's decision to permit or deny the motion is based on the totality of the circumstances." *Id.* (citing *Brewster*, 137 F.3d at 858). "[T]he district court is not required to make findings as to each of the *Carr* factors." *Id.* (citing *Brewster*, 137 F.3d at 858). Rodriguez does not explicitly address all the *Carr* factors in his motion and brief.[5] The government, however, addresses each factor in its opposition response.

A defendant is "not entitled to an evidentiary hearing, [although] a hearing is required 'when the defendant alleges sufficient facts which, if proven, would justify relief.'" *Id.* (quoting *United States v. Mergist,* 738 F.2d 645, 648 (5th Cir.

---

[5]The motion is essentially one page, and the brief is about 1½ pages.

1984)).  "[A] district court's decision not to hold an evidentiary hearing is reviewed for abuse of discretion."  *Id.* (citing *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983)).  In *Powell* the circuit court found no such abuse of discretion where the defendant alleged numerous reasons for allowing her guilty plea to be withdrawn but, even if they were all true, under the totality of the *Carr* factors, they clearly did not tip in her favor, and there was no indication that the district court made any clear errors in assessing the evidence pertaining to the defendant's plea.  *Id.* at 371.  The Fifth Circuit has also upheld the denial of an evidentiary hearing where the defendant "did not assert his innocence, delayed several weeks before seeking to withdraw his plea, and entered his plea with the assistance of counsel." *Washington*, 480 F.3d at 317.  The court holds that Rodriguez's motion is insufficient to warrant convening an evidentiary hearing, particularly considering the substantial evidence developed during the plea hearing that defeats his claim that his plea was not knowing or voluntary.

B

1

The first *Carr* factor inquires whether a defendant has asserted his innocence.

In his motion, Rodriguez states "he is innocent of the charge of conspiracy to distribute 150 kilograms of cocaine."  Mot. 1.

- 6 -

But Rodriguez is not charged with conspiracy to distribute 150 kilograms of cocaine; he is charged with conspiring to possess with intent to distribute and distribute more than five kilograms of cocaine. Consequently, Rodriguez appears to be challenging the drug quantity attributable to him for purposes of determining his sentence, i.e., 150 kilograms, not directly refuting his guilt based on his commission of each essential element of count one. Once a defendant admits the drug quantity necessary to establish his guilt of the offense charged and the statutory maximum penalty (here, based on more than five kilograms of cocaine), a challenge to the amount of drugs involved in the conspiracy relates to the severity of the sentence. Rodriguez does not assert in his motion that he is innocent of conspiring to possess with intent to distribute and distribute more than five kilograms of cocaine. It is therefore entirely possible that he is merely challenging the accuracy of the facts on which the court may base his sentence.

Further, Rodriguez offers no basis for his assertion. The factual resume supports the finding that the defendant is guilty of the offense charged in count one, including the drug quantity element. And in the factual resume, Rodriguez admitted that he is accountable for at least 150 kilograms of cocaine. *See* Factual Resume 3 ("Based on his involvement in the conspiracy, Lazaro Rodriguez admits to participating in the distribution of at least 150 kilograms of cocaine during the conspiracy."). During his

guilty plea, in response to the court's question whether he "admit[ted] on [his] oath in open court that the facts contained in the factual resume are true and correct in every respect," Rodriguez responded, "Yes, Your Honor." Tr. 25. A conclusory allegation that is clearly refuted by the record is insufficient. *United States v. Bounds*, 943 F.2d 541, 543 (5th Cir. 1991); *see also United States v. Bond*, 87 F.3d 695, 701 (5th Cir. 1996) ("Bond has asserted his actual innocence, but under *Carr*, this factor is insufficient on its own in the total absence of evidence to support the assertion, since a contrary rule would grant the defendant an unappropriate ability to reverse his decision to plead guilty."). Because the statement in Rodriguez's motion is ambiguous and unsupported, the first factor weighs against granting his motion.

In his *pro se* letter to the court, Rodriguez is more specific. He suggests that he would be willing to plead guilty to a drug offense involving a smaller quantity of cocaine. *See* Nov. 9, 2009 Letter 1 ("I am more than willing to plead guilty to the fact that I bought 3 kilos of cocaine from my brother[.]"). He asserts that he was not a part of the conspiracy. *Id.* at 2 ("I did not participate in any of this stuff [my brother] was doing except when I bought those three kilos of cocaine from him so I could sell them and make some money for myself.") ("I am not a part of this conspiracy[.]"). He complains that he informed his attorneys of this fact, "and they refuse[d] to negotiate a proper plea agreement

for me." *Id.* And he avers that he wants to "have new counsel assigned in order to continue plea negotiations with the government for the proper criminal activity that I will accept full responsibility for." *Id.* Elsewhere in his letter, he states that he is "simply trying to plead guilty to the crime I actually committed[.]" *Id.* at 1. These assertions do suggest that, while Rodriguez admits that he committed *some* drug crime, he does not admit that he committed the crime charged in count one. Therefore, the court will assume under *Carr* that Rodriguez asserts his innocence of the offense to which he pleaded guilty.

2

The second *Carr* factor is whether the government would be prejudiced if the motion were granted. This factor intertwines with the fourth factor——whether the court would be substantially inconvenienced——and the seventh *Carr* factor——whether the withdrawal would waste judicial resources.

Although Rodriguez bears the burden on his motion, he has done nothing but assert that the government's case would not be prejudiced and a withdrawal would not waste the court's time. The government concedes that it cannot assert "serious prejudice" by the withdrawal of the plea if it is afforded sufficient time to prepare for trial. P. Resp. [4]. But it points out that, while necessary trial witnesses are still available, many are co-conspirators who have now been sentenced and are in federal

custody.   A trial would require the government to determine the witness' locations, arrange for their transportation to the trial, and actually transport them.   These burdens would not have been incurred had Rodriguez gone to trial with Mata on June 22, 2009, the scheduled trial date.

But even if the government cannot show prejudice, the court finds that allowing Rodriguez to withdraw his plea would substantially inconvenience the court and waste judicial resources. As noted, this case was ready for trial on June 22, 2009, and the charges against Mata, including the conspiracy count to which Rodriguez has pleaded guilty, were tried to a jury.   Had Rodriguez not pleaded guilty, the charges against Rodriguez would have been tried to the same jury.   If the court grants Rodriguez's motion, a second jury must be empaneled, and that jury will be required to hear evidence that duplicates what was presented at Mata's trial (because, for example, the government must prove the conspiracy beyond a reasonable doubt, regardless of the different roles that Rodriguez and Mata may have played).   Additionally, the court has already conducted two guilty plea hearings regarding Rodriguez. Although during the first hearing Rodriguez stated that he did not want to plead guilty, he advised the court of this fact only after the court had completed substantial questioning.   And the court has spent additional time addressing Rodriguez's post-plea continuance requests.   Finally, the probation office has prepared the PSR and

an addendum.

The court therefore concludes that the *Carr* factors that consider whether the government would be prejudiced, whether the court would be substantially inconvenienced, and whether the withdrawal would waste judicial resources, favor denying the motion.

3

The third *Carr* factor——whether Rodriguez has delayed in filing his withdrawal motion——also weighs against granting his motion. Rodriguez pleaded guilty on June 16, 2009.  The PSR was disclosed on August 5, 2009.  Giving Rodriguez the benefit of November 9, 2009 as the relevant date, *see supra* note 3, he waited almost five months after pleading guilty, and, after the PSR was prepared and disclosed, to move to withdraw his plea.

As *Carr* teaches, "[w]ithdrawal is permitted for pleas unknowingly made; the purpose is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty."  *Washington*, 480 F.3d at 317 (brackets and internal quotation marks omitted) (quoting *Carr*, 740 F.2d at 345). Rodriguez does not explain why he waited as long as he did to move to withdraw his plea.  The fact that he waited until after the PSR was prepared and disclosed tends to establish that he made a tactical choice that he is now seeking to undo in view of the PSR's

calculation of the advisory guideline range and the sentence that he faces.  This factor weighs against granting Rodriguez's motion.

4

The fifth *Carr* factor is whether close assistance of counsel was available.  Rodriguez does not address this factor in his motion, although he does so indirectly in his *pro se* letter.

In Rodriguez's letter, he makes the following complaints about Linder and Belt: both attorneys took advantage of his illiteracy, and Belt did not tell him what he was signing, Nov. 9, 2009 Letter 1; he has only seen Belt three times, *id.*; Belt explained to him that he was able to get a good plea agreement from the government, but when another inmate read the plea agreement and factual resume to Rodriguez, he learned that the plea was exactly the one Linder had attempted to have him sign, and even had Linder's name on it, *id.*; Belt did not file objections to the PSR, *id.*; Rodriguez informed his attorneys about the nature of his activities (including his limited illegal conduct), and they refused to negotiate a proper plea agreement, *id.* at 2; and his attorneys refused to allow him to take the plea agreement to his jail unit so that he could have someone else read it and verify that the attorney had explained it correctly, *id.*

These assertions——insofar as pertinent to the court's decision whether to allow Rodriguez to withdraw his plea——are refuted by testimony that Rodriguez gave under oath at his plea hearing on

June 16, 2009. "[S]olemn declarations in open court carry a strong presumption of verity." *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (addressing motion to withdraw guilty plea)).  The court therefore assigns more weight to what Rodriguez told the court under oath in open court than what he has said in his unsworn letter.

The court began the hearing by establishing that Rodriguez wanted to be represented by Belt, even though Linder had represented him at the prior hearing.  Tr. 3.  Because Rodriguez had decided at the prior hearing not to plead guilty, the court noted that, if Rodriguez had "some doubts" about pleading guilty, the court would "like to get those out in the open now."  *Id.* Rodriguez responded that he had no doubts.  *Id.*

The court specifically noted that the plea papers were the ones filed on March 17, 2009, i.e., before Rodriguez's first guilty plea hearing, and that they "*refer to Mr. Linder and have his signature*[.]"  *Id.* at 4 (emphasis added).  Despite what Rodriguez now says in his *pro se* letter, he had no complaint at the time he pleaded guilty about the use of the same plea papers:

- 13 -

> The Court: And, Mr. Rodriguez, you understand what I just discussed with Mr. Belt, that is, the papers that we're going to use for your plea *are the ones that you and Mr. Linder signed*?
>
> The Defendant: Yes, sir.
>
> The Court: Okay. *And do you have any objection to that*?
>
> The Defendant: No, sir.

*Id.* at 5 (emphasis added).

The court established that Rodriguez cannot read and write English and that someone else read to him in English the plea papers he signed and the indictment. *Id.* at 7. Rodriguez said he felt he understood the indictment and plea papers. *Id.* And he acknowledged that, if the evidence against him was in English and he could not read it, someone had explained it to him. *Id.* Rodriguez also stated that the indictment had been explained to him and that he understood the nature of the charge to which he intended to plead guilty. *Id.* at 8. He responded "Yes, sir" to the court's question inquiring whether he was "fully satisfied with Mr. Belt's representation of [him] and with the legal services and advi[c]e that he's provided to [him]." *Id.* at 9.

Rodriguez complains that his attorneys did not explain the plea agreement to him. But this assertion, too, is belied by Rodriguez's sworn answers to the court's questions.

> The Court: Mr. Rodriguez, I understand from prior answers you've given this morning that the plea agreement and the plea agreement supplement were read to you and explained to you even though you couldn't read them; is that correct?
>
> The Defendant: Yes, sir.
>
> The Court:   And do you feel that you understood the plea agreement and the plea agreement supplement before you signed them?
>
> The Defendant: Yes, sir.
>
> The Court:   Do you have any changes or corrections to make to the plea agreement or the plea agreement supplement?
>
> The Defendant: No, sir.

*Id.* at 9-10.

Rodriguez gave similar answers concerning the factual resume.

> The Court: And, Mr. Rodriguez, I understand it from prior answers that you gave this morning, before you signed this document[,] this document was explained to you; is that correct?
>
> The Defendant:  Yes, Your Honor.
>
> The Court: And do you feel that you understood it before you signed it?
>
> The Defendant:  Yes, Your Honor.
>
> The Court:   Do you have any changes or corrections to make to the factual resume?
>
> The Defendant: No, Your Honor.

*Id.* at 23-24.

Additionally, following the court's questions about the factual resume, the following exchange, which Belt initiated,

occurred:

> Mr. Belt: Yes, judge, I am satisfied that he understood the factual resume,
>
> And I'd like to add, too, that I have visited him a number of times, at least eight times in the last 30 days, and as recent as yesterday on two occasions, myself and my associate, Mr. Estrada, went over with him the documents again, in the morning and in the afternoon, to make sure that he understood [th]em.
>
> The question — he did understand — he indicated he understood them before he signed them, but I'd like the court to know that he also understood them subsequent to signing them at the latest yesterday.

*Id.* at 24.  In other words, Belt was advising the court that he and Rodriguez had gone over the plea papers extensively, and that Rodriguez not only understood them *before* he signed them prior to the *first* guilty plea hearing, but he understood them *after* he signed them, and prior to the *second* guilty plea hearing.  After Belt completed this statement, the court asked Rodriguez directly: "Mr. Rodriguez, do you agree with what Mr. Belt just said?  *Id.*  He responded:  "Yes, Your Honor."  *Id.*

Rodriguez's answers show that he knew what was contained in the plea papers and that he agreed with their contents.  Belt and his associate went over the indictment and plea papers extensively with Rodriguez.  Rodriguez was satisfied with Belt's representation, and he had no complaints about using the same plea papers that Linder had signed.  Rodriguez in fact had close assistance of counsel.

- 16 -

Moreover, Rodriguez showed at his first plea hearing that he was not a person who would hesitate to advise the court if he disagreed with anything being said in court.  He had already stopped one plea hearing by stating that he did not want to plead guilty.  The court had made clear at the second hearing that this was "perfectly fine" because his decision "ha[d] to be a voluntary one."  *Id.* at 3.  If Belt's representations to the court were not accurate, Rodriguez, who was present and heard what was being said, knew he could tell the court again that he did not want to enter a plea of guilty.  He did not even have to explain why.

Accordingly, the fifth *Carr* factor weighs against granting Rodriguez's motion.

5

The sixth *Carr* factor is whether the original plea was knowing and voluntary.  Rodriguez asserts that his plea was not knowing and voluntary because "he was unsure regarding the plea based upon the varying legal advice he had received from his several attorneys." D. Br. 4.

The extensive excerpts from the plea hearing quoted above, and Rodriguez's other answers during the plea hearing, refute this assertion as well.  The court conducted a careful and thorough plea hearing during which it asked Rodriguez numerous questions that he answered under oath.  In a series of several questions, the court specifically asked Rodriguez whether he understood the charge

- 17 -

against him, the consequences of pleading guilty (i.e., the punishment provided by law and how the advisory sentencing guidelines might affect his sentence), the specific rights he was relinquishing by pleading guilty, and the plea documents he had signed. The answers carry "a strong presumption of verity." *Lampazianie*, 251 F.3d at 524. In the end, the court expressly found, based on its observation of Rodriguez, his responses under oath, and the responses of his counsel, that Rodriguez's plea of guilty was a knowing and voluntary plea.

The court adheres to the finding that Rodriguez's guilty plea was knowing and voluntary. This factor supports denying his motion.

6

Having considered the *Carr* factors under the totality of the circumstances, the court concludes that Rodriguez's motion should be denied. Essentially, what happened in this case is this: Rodriguez decided to plead guilty, and the court scheduled a hearing to take his plea. Rodriguez lost confidence in his first lawyer, Linder, and wanted the assistance of a second retained lawyer, Belt. After having the close assistance of Belt, Rodriguez pleaded guilty under the same plea terms that Linder had recommended. Rodriguez was satisfied with this advice and with his plea until the PSR was issued and he saw the full force of what he faces as a possible sentence. He now wants to renegotiate his

plea, not because he does not want to plead guilty, but because he wants a more favorable plea bargain, i.e., to plead to an offense and a drug quantity that will reduce his sentence exposure. Considering the totality of the circumstances, it would not be fair and just to permit Rodriguez to withdraw his plea.

                                    III

     Rodriguez has not shown a fair and just reason for requesting that his guilty plea be withdrawn. Rodriguez's January 5, 2010 motion to withdraw his plea of guilty is therefore denied. The court will sentence Rodriguez, as scheduled, on January 29, 2010 at 9:00 a.m.

     **SO ORDERED.**

     January 22, 2010.


                              _____
                              SIDNEY A. FITZWATER
                              CHIEF JUDGE


                                  - 19 -